**STATE of Minnesota, Appellant,**

v.

**Russell GERRING, Respondent.**

**No. C2-87-1724.**

Court of Appeals of Minnesota.

Feb. 2, 1988.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Thomas A. Weist, Asst. Co. Atty., Minneapolis, for appellant.

Mark W. Kelly, William F. Kelly & Assoc., Excelsior, Steven B. Anderson, Janecek & Wright, New Brighton, for respondent.

Heard, considered and decided by SEDGWICK, P.J., and RANDALL and KALITOWSKI, JJ.

## OPINION

SEDGWICK, Judge.

Respondent Russell Gerring was charged with unlawful disposal of hazardous waste. The trial court dismissed the charges on the ground the statutory definition of hazardous waste is unconstitutionally vague. We reverse.

## FACTS

For purposes of this appeal, the facts are as stated in the complaint.

Gerring owns (through a corporation) a gasoline station in Plymouth called "Mr. Gas." On the morning of April 28, 1986, an investigator with the state's Division of Weights and Measures determined that Mr. Gas' fuel storage tanks contained too much

water. Water, petroleum varnish and sludge usually collect at the bottom of such tanks. The investigator ordered the station manager to pump the bottom layer of water from the tanks. Such pumping normally produces a mixture of water, sludge and gasoline.

When the investigator returned at 11:30 A.M., he retested the tanks and found they met state standards. Before leaving, the investigator noticed three 55–gallon and two 30–gallon drums near the openings through which the tanks would be pumped. He estimated the drums contained approximately 150 gallons of water, sludge and gasoline.

The investigator returned to Mr. Gas at about 2:30 because he realized he had not put approval stickers on the gasoline pumps. Upon arriving, he found a large oily slick on the driveway. The entire area smelled of gasoline, petroleum varnish and sludge. The investigator saw sludge on the driveway and in a ditch near the station. The station manager told the investigator that the owner had dumped the gasoline, sludge and water and used a hose to wash the mixture into the ditch. Another employee told a different investigator that Gerring typically oversees tank pumping.

The station manager told the Hennepin County Attorney's office that after the tanks were pumped, the contents were placed in five barrels containing water and gas from a similar pumping on April 25. Final contents of the barrels was between one-quarter and one-half gasoline. After the investigator had left around noon on April 28, Gerring asked the station manager to turn on the water for a hose so Gerring could wash the contents of the barrels, which had been emptied, down the driveway.

According to the station manager, there was a very strong odor of gasoline, so strong that customers asked whether there was a gasoline leak. The station manager told Gerring her doctor said she should not be around gasoline fumes because she was pregnant. Gerring told her the fumes were "no big deal."

The state investigator took samples from potholes along the roadway next to the station and a puddle near the drainage ditch on April 28. Petroleum sludge coated the pint jar and funnel used to collect the samples. Tests revealed the liquid had a flash point of 98 degrees Fahrenheit and a lead content of 10 milligrams per kilogram. According to the complaint, state regulations consider liquids with a flash point under 140 degrees to be hazardous wastes, and the limit for lead content in raw water discharges is .05 milligrams per kilogram.

Count I of the criminal complaint filed against Gerring charges him with unlawful disposal of hazardous waste, a felony, under Minn.Stat. § 115.071, subd. 2b (1986). Count IV charges him with negligent disposal of hazardous wastes under Minn.Stat. § 115.071, subd. 2a(a) (1986). The trial court granted Gerring's motion to dismiss the charges on the ground the statutory definition of "hazardous waste" is void for vagueness, and the state appeals.

## ISSUES

1. Is the order dismissing the charges appealable?

2. Is the statutory definition of hazardous waste void for vagueness as applied to the facts of this case?

3. Did the trial court err in dismissing the charges for lack of probable cause?

## ANALYSIS

### I.

*Appealability*

The state appeals under Minn.R. Crim.P. 28.04, subd. 1, which allows appeals from pretrial orders, but specifically excepts dismissals based on lack of probable cause. Gerring argues the trial court's order dismissed the charges for lack of probable cause and therefore is not appealable. The order is unclear as to whether it is based in part on lack of probable cause.

The state has no additional evidence with which to re-charge Gerring. To the extent the dismissal is based on lack of probable cause, therefore, it effectively bars prose-

cution and is appealable. *See State v. Olson,* 382 N.W.2d 279, 281 (Minn.Ct.App. 1986). Also, since the trial court found the statute unconstitutional on its face, its order would foreclose prosecution even if additional evidence were available.

## II.

### *Vagueness*

**A. *The charges.***

The state charges that the gasoline-sludge mixture allegedly dumped by Gerring was a "hazardous waste" required by law to be recycled or disposed of at a licensed facility. *See* Minn.R. 7045.0219, subp. 5(G) (Supp.1986). Count I (unlawful disposal) charges Gerring with violating the following statute:

> Any person who knowingly, or with reason to know, disposes of hazardous waste in a manner contrary to any provision of this chapter or chapter 116, or any standard or rule adopted in accordance with those chapters relating to disposal, is guilty of a felony.

Minn.Stat. § 115.071, subd. 2b (1986).

Count IV (negligent disposal) charges Gerring with committing the following offense:

> willfully or negligently violating any provision relating to hazardous waste * * *.

Minn.Stat. § 115.071, subd. 2a(a) (1986).

This appeal concerns the statute's definition of "hazardous waste":

> "Hazardous waste" means any refuse, sludge, or other waste material or combinations of refuse, sludge or other waste materials in solid, semisolid, liquid, or contained gaseous form which because of its quantity, concentration, or chemical, physical or infectious characteristics may (a) cause or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible illness; or (b) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed. Categories of hazardous waste materials in-

clude, but are not limited to: explosives, flammables, oxidizers, poisons, irritants, and corrosives.

Minn.Stat. § 116.06, subd. 13 (1986). (This definition applies to chapter 115. *See* Minn.Stat. § 115.01, subd. 18 (1986)).

The trial court dismissed both counts because it found the definition of hazardous waste was unconstitutionally vague.

**B. *Void for vagueness doctrine.***

The United States and Minnesota Constitutions require statutes which provide the basis for criminal prosecutions to meet due process standards of definiteness. *State v. Newstrom,* 371 N.W.2d 525, 528 (Minn. 1985).

> [T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

*Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983), *quoted in Newstrom,* 371 N.W.2d at 528.

Vagueness challenges to statutes that, as here, do not involve first amendment freedoms must be examined in light of the facts in the case at hand. *United States v. Powell,* 423 U.S. 87, 92, 96 S.Ct. 316, 319, 46 L.Ed.2d 228 (1975); *State v. Becker,* 351 N.W.2d 923, 925 (Minn.1984). A person whose conduct is clearly proscribed "cannot complain of the vagueness of the law as applied to others." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982). The person charged must show the statute "lacks specificity as to his own behavior and not as to some hypothetical situation." *State v. Currie,* 400 N.W.2d 361, 365 (Minn.Ct.App.), *pet. for rev. denied* (Minn. April 17, 1987). Unless the statute proscribes no comprehensible course of conduct at all, it will be upheld. *Becker,* 351 N.W.2d at 925.

The trial court explained its decision as follows:

The hazardous waste statute fails to provide sufficient standards by which to analyze the concentration of substances, the discharge of which the statute prohibits * * *.

 *  *  *  *  *  *

[T]here are no specific criteria in the statute for determining whether a certain amount of a potentially hazardous substance is in fact hazardous under * * * the definition in § 116.06, subd. 13.

 *  *  *  *  *  *

[T]he statute is unconstitutional because of this vagueness * * *. This is a statute that makes a felony of naturally occurring phenomena and innocent conduct. For example, it is legal to operate outboard boat motors on many Minnesota lakes, and any of these motors could leak a teaspoon or so of gas into a lake. Under the hazardous waste statute, which does not give standards for determining what amount and/or concentration of a substance is "hazardous," this small amount of gasoline discharged into the lake would be a felonious act.

The trial court misapplied the void-for-vagueness doctrine. Rather than determining if the statute was vague as applied to Gerring's alleged conduct, it held the statute unconstitutional based on a hypothetical set of facts.

▪ The statutory definition of hazardous waste satisfies due process as applied to the facts of this case. The statute defines hazardous waste to include

any * * * combinations of * * * waste materials in * * * liquid * * * form which because of its quantity [or] concentration * * * may * * * pose a substantial * * * hazard to human health or the environment when improperly * * * disposed of * * *. [H]azardous waste materials include * * * flammables [and] poisons * * *.

Minn.Stat. § 116.06, subd. 13 (1986).

This definition clearly applies to the substance allegedly dumped by Gerring: 150 gallons of water, gasoline and petroleum sludge, one-quarter to one-half of which was gasoline. Persons of ordinary intelligence—especially those who own gasoline stations—should know that dumping this much gasoline and petroleum sludge into a ditch poses a substantial hazard to human health. Since the statute clearly applies to Gerring's conduct, it does not violate his due process rights. *See, e.g., Powell,* 423 U.S. at 93, 96 S.Ct. at 320 (statute forbidding mailing of concealable firearms not void for vagueness, despite potential ambiguity as applied to hypothetical facts, because it gave adequate notice that mailing 22-inch sawed-off shotgun was criminal offense).

We recently upheld the statute underlying Count I against a void-for-vagueness challenge. In *State v. McAllister,* 399 N.W.2d 685 (Minn.Ct.App.1987), this court overturned a trial court's decision that Minn.Stat. § 115.071, subd. 2b, was unconstitutionally vague on its face because a person could not know if a substance was a hazardous waste under the statutory definition. 399 N.W.2d at 688. Although we rejected the state's contention that rules specifically listing hazardous substances were incorporated into the statute, we upheld the statute based in part on its requirement that the defendant have disposed of hazardous waste "knowingly, or with reason to know." *Id.* at 689. We decided the scienter requirement "mitigates any vagueness in the statutory definition." *Id.* (citing *Flipside,* 455 U.S. at 499, 102 S.Ct. at 1193).

The trial court here distinguished *McAllister* on the ground that there the question "was whether a person could know that a particular substance was hazardous under the statute, not whether a particular concentration of a substance was hazardous." This substance/concentration distinction is meaningless, however, because the statute defines hazardous waste as waste that is hazardous "because of its quantity [or] concentration." Minn.Stat. § 116.06, subd. 13 (1986).

Gerring's brief addresses Count I only. He contends the unlawful disposal statute encourages arbitrary and discriminatory enforcement.

The statute is not unconstitutional, however, unless it "proscribes no comprehensible course of conduct." *Becker,* 351 N.W. 2d at 925; *see Newstrom,* 371 N.W.2d at 528 (statute requiring teachers to have qualifications "essentially equivalent" to those of public school teachers unconstitutionally vague because it provides "no guidance" to enforcement officials). The fact that the legislature could have provided a more specific statutory definition of hazardous wastes does not make the statute unconstitutionally vague. *See Powell,* 423 U.S. at 93–94, 96 S.Ct. at 320–321.

### III.

### *Probable Cause*

■ Gerring primarily argues that the trial court did not err in dismissing the complaint for lack of probable cause. It is unclear from the court's memorandum whether this was an additional ground for dismissal. (Gerring moved to dismiss on constitutional grounds only.)

If the trial court dismissed for lack of probable cause, its decision would be clearly erroneous. The complaint contains information sufficient for probable cause to believe Gerring dumped a hazardous substance into the ditch, based on the quantity of gasoline and sludge, and the lead content and flash point of the samples. Although it would have been preferable if the state had specified the exact quantity, concentration and characteristics of the substances, doing so was obviously impossible after they were dumped.

### DECISION

The trial court erred by dismissing the charges. The hazardous waste statute is not unconstitutionally vague as applied to Gerring's alleged conduct, and there was probable cause to believe he committed the offenses.

Reversed.